No. 37,515

GERTRUDE T. LEONARD, *Appellee*, v. KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant*.

(204 P. 2d 760)

Opinion filed April 9, 1949.

*J. O. Emerson*, of Kansas City, argued the cause, and *Edward M. Boddington, Edward M. Boddington, Jr.*, both of Kansas City, and *Charles L. Carr*, of Kansas City, Mo., were with him on the briefs for the appellant.

*James K. Cubbison*, of Kansas City, argued the cause, and *Blake A. Williamson* and *Lee Vaughan*, both of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for the wrongful death of plaintiff's son alleged to have been caused when an automobile in which he was a passenger collided with a streetcar of defendant. Judgment was for plaintiff. Defendant appeals.

The petition alleged that plaintiff was the mother and next of kin of Henry E. Leonard, who was single, never married and left no issue; that her son was killed April 6, 1946, and no personal representative had been appointed for his estate; that defendant operated a streetcar system in Kansas City, Kan., and one Bennett was the operator of one of its cars; that Minnesota avenue is an east-and-west street in Kansas City and Tenth street intersects it at right angles; that on Minnesota avenue there are two streetcar tracks, one for eastbound traffic and one for west; that at the southeast corner of the intersection there are two tracks curving to the southwest, connecting with rails laid on Tenth street by means of which cars from the tracks on Minnesota avenue may be switched to these tracks and thence on Tenth street to car barns maintained by defendant; that about 12:30 a. m., April 6, 1946, Henry E. Leonard was driving an automobile east on Minnesota avenue at about twenty-five miles per hour and when he had reached about the east side of the intersection a streetcar which had been headed east with its rear portion just east of the intersection suddenly without warning backed into the curved tracks about eight feet into the path of the automobile plaintiff's son was driving and he was fatally injured. The petition then alleged what deceased had been earning, and that at the time there was parked diagonally at the south curb of Minnesota avenue about fifteen feet east of the intersection with its rear extending into the street an automobile, leaving room for but one automobile to pass in the traveled portion of Minnesota avenue between the streetcar and the south curb. The petition then listed six specific acts of negligence on the part of the defendant, that is, failing to keep a lookout; failing to observe the approaching automobile; suddenly backing into the street against the automobile without ascertaining if that could be done with safety; failing to warn the driver of the car of intention to back; failing to have the car equipped with proper controls; failing to have a flagman at the intersection. After an allegation as to funeral expenses judgment for $10,000 was asked.

The first defense pleaded was a general denial. The second defense pleaded was that the street and the car were well lighted; Henry E. Leonard was driving sixty miles per hour; the car was stopped at the time of the collision, and had Leonard been traveling twenty miles per hour the collision would not have killed him; at the rate of speed at which he was traveling collision with the parked car would not have killed Leonard; Leonard by operating his automobile at a rate of twenty miles per hour could have avoided his death; he could have avoided the collision by turning a little bit to the right or slowing down by turning down Tenth street.

The answer further alleged that if Leonard could not have saved his life by exercising care in those matters because of the speed of his car, then he was negligent in operating his automobile at such a rate of speed that he could not control it.

The reply was a general denial.

There were some pretrial motions, which will be dealt with later on in this opinion. Before trial the action was dismissed as to the operator of the streetcar and went forward against the Public Service Company only.

The first witness was a sister of deceased, who testified as to his earnings while alive and contributions to his mother, the plaintiff.

A sergeant of police testified that Leonard was unconscious and that they moved him from the automobile; there was some blood but witness did not know where it came from and sent him to the hospital; there was a car parked at an angle at the south curb of Minnesota avenue; the automobile's left wheel was under the street car; the wheel of the automobile was against the southwest wheel of the streetcar, and the switch was eight or ten feet east of that; there was about six feet between the streetcar and the parked car to the south of it.

At the close of plaintiff's evidence defendant demurred to it, first, because it showed no negligence against defendant; second, it showed Leonard was guilty of contributory negligence and failed to show that Leonard's death was caused by the collision. Another ground urged was that the action was brought by Leonard's mother alone and it should have been brought by her and the administrator of her husband's estate, since he was dead. This demurrer was overruled.

The defendant introduced evidence as to the measurements of the street; the dimensions of the streetcar and that the automobile

was traveling at a much greater rate of speed than witness for plaintiff had testified to.

The jury was duly instructed, the case was submitted and a verdict returned for $4,625. Special questions were answered, as follows:

"1. Could the deceased, Henry Leonard, by the exercise of ordinary care have turned the automobile he was driving a little farther to the right so as to miss the street car and thereby save his life? A. No.

"2. State whether the streetcar was standing or was moving at the time of the collision. A. Standing.

"3. At what speed was Henry Leonard driving the automobile (a) at the time he entered the intersection of Tenth and Minnesota; (b) at the time of the collision?
A. (a) 30 miles per hour.
    (b) 20 miles per hour.

"4. Was the streetcar lighted, and did it have red lights burning on the west side of the car at the time Henry Leonard with his automobile approached and collided with the streetcar? A. Yes.

"5. At the time of the collision how far did the southernmost portion of the streetcar overhang to the south of the south rail of the eastbound main tracks? A. 3 feet.

"6. What was the distance from the south track of the eastbound car to the south curb of Minnesota Avenue? A. 26 feet 10 inches.

"7. Do you find from the evidence that the defendant was guilty of negligence that was a proximate cause of the death of Henry Leonard? A. No.

"8. If you answer the foregoing question 'Yes,' then state specifically what such negligence was. A. None.

"9. Did the defendant provide a flagman or watchman to warn or control traffic at said intersection while said streetcar was being backed around and across said portion of said intersection? A. No.

"10. Was any signal or warning given by the defendant to the driver of said automobile of said operator's intention to back and turn said streetcar onto said curve? A. No.

"11. If you answer the previous question in the affirmative (a) State how far away the Leonard car was at the time thereof; and (b) State what signal or warning was given. A. (a) None; (b) None.

"12. Did the motorman keep a lookout for the rear of said street car for vehicles approaching from the rear of said street car, immediately prior to and while backing up said street car? A. No.

"13. If you answer the previous question in the affirmative, state at what distance away the motorman first observed the approaching Leonard car. A. None.

"14. Was there anything to prevent the motorman from seeing the Leonard car approaching? A. No.

"15. If you answer the previous question in the affirmative state what if anything prevented the motorman from seeing said car approaching. A. None."

The defendant filed a motion for judgment on the special findings notwithstanding the general verdict and for arrest of judgment.

The plaintiff filed a motion to strike out the answer to question No. 7, also a motion to approve the general verdict and to enter judgment. On the same day plaintiff filed a motion for a new trial. This motion was later withdrawn. The defendant filed no motion for a new trial. The trial court overruled defendant's motions, sustained plaintiff's motion to strike out the answer to question No. 7 and entered judgment for plaintiff in accordance with the verdict.

The defendant has appealed and assigns as error, first, the overruling of its demurrer to plaintiff's evidence; second, overruling its motion for judgment on the answers to special questions; third, setting aside the answer to special question No. 7; fourth, entering judgment on the general verdict after setting aside the answer to question No. 7; fifth, entering judgment for plaintiff for the full amount when under any circumstances she was entitled to only half of it; sixth, overruling the motion of defendant to continue the cause binding revivor; seventh, failure to revive as to the deceased plaintiff, Harry A. Leonard, the deceased father of Henry Leonard; and eighth, allowing amendments to the pleadings without first having revived the action.

We shall consider first defendant's demurrer to plaintiff's evidence. The grounds of this demurrer are fourfold. Defendant argues first that this demurrer should have been sustained because there was no substantial evidence that the collision caused Leonard's death; second, the plaintiff's evidence proved Leonard to be guilty of contributory negligence as a matter of law; third, defendant was not shown to be guilty of any negligence that was the proximate cause of the death of Leonard; and fourth, there was a fatal variance between the allegations in plaintiff's petition and her proof as to whether she was the proper party.

We have recited heretofore the essential facts as to Leonard's condition. He was taken out from behind the steering wheel unconscious, laid on the ground, placed in an ambulance, and died within half an hour on his way to the hospital. There were no broken bones, caved-in skull, cut throat or any other outward signs or marks of injury. One witness testified that he was unconscious when the automobile stopped, he was taken out of it, laid on the ground, put in an ambulance and died in it within half an hour on his way to the hospital. He was twenty-five years old; had just

been discharged from the navy; his health was good and he had been dancing that night. The evidence offered by plaintiff was that the automobile was traveling at about twenty miles per hour when it hit the streetcar. Defendant states it is unreasonable and impossible to believe that such a blow at such a low rate of speed softened by the sliding forward of the automobile eight feet could produce the death of a man sitting behind the steering wheel, as was deceased. Defendant cites a line of authorities where we have held that a fact is not proved by circumstances which are merely consistent with its existence. A fact such as that of the collision caused Henry E. Leonard's death may be proved by circumstantial evidence, just as may any issue of fact. In the consideration of a demurrer to plaintiff's evidence we will not weigh conflicting testimony and we will indulge all reasonable presumptions and draw all reasonable inferences in favor of the plaintiff. Defendant points out testimony that the father of deceased died of heart failure a short time before the trial and argues that it is as reasonable to believe that deceased died as the result of a heart attack as to believe that he died as a result of the collision. The rule is stated in 17 C. J. 1309, as follows:

". . . it is sufficient to prove a wrongful act or omission on the part of defendant, adequate to produce the injury, without negativing all possible suggestions of the existence of other causes. Proof beyond a reasonable doubt is not required; a preponderance of the evidence is sufficient, and this may consist of circumstantial evidence. . . ."

We treated this question extensively in *Noller v. Aetna Life Ins. Co.*, 142 Kan. 35, 46 P. 2d 22. There we passed on the question of which one of two people found dead in bed together died first. A demurrer to the plaintiff's evidence had been sustained. In the course of that opinion we said:

"In doing that we must say that if there was any theory upon which the jury might have concluded that Mrs. Hammatt survived, drawing from each proven fact and circumstance the inference most favorable to the contention that she did survive, then the demurrer should have been overruled and the case should have been submitted to the jury." (p. 38.)

In following that rule we will consider that deceased was a healthy twenty-five-year-old man. The automobile he was driving collided with a streetcar with enough force to wreck the automobile. He never regained consciousness and died half an hour later. It is true that the other passengers in the automobile were not killed or

even badly injured. We cannot account for the vagaries of automobile collisions. There was substantial evidence, measured as we do evidence on a demurrer to the evidence, that Leonard's death was caused by the collision.

Defendant next argues that its demurrer should have been sustained because it showed that Leonard was guilty of contributory negligence as a matter of law. To this connection defendant urges that deceased should have slowed down, stopped or turned aside and thereby avoided colliding with the streetcar. The passenger who was riding in the front seat with deceased testified that the car was going about twenty to thirty miles per hour and as they approached the intersection they saw a car crossing Minnesota avenue and a car on the eastbound tracks headed east; that Leonard was driving east "a straddle" of the south rail of the eastbound track. He saw the car eastbound and turned to the right of the streetcar to go between it and the parked car on Minnesota avenue, when the streetcar backed up suddenly and hit the automobile. Witness was then thrown out and deceased was pinned in and a couple of men got him out. The back end of the streetcar struck the left front fender of the automobile. On cross-examination he testified that the lights were on in the streetcar and he did not see it until after the northbound car had crossed Minnesota avenue, the place Leonard made the turn to get off the streetcar track was about the west curb of Tenth street. He testified that the streetcar might have been stopped at the time of the collision but he had thought it was moving. At the time they arrived at the intersection he thought the streetcar was moving east or stopped; that it ceased moving east when the automobile arrived about the middle of Tenth street; it was then the car ceased moving east; stopped and then backed eight or ten feet. In addition there was clear evidence as to the nature of the side track; that the streetcar was actually on the side track a few feet; that if it was not actually moving west on an eastbound track at the time of the collision it had been so moving at only an instant before. One traveling east on the street would in the exercise of his judgment expect the streetcar to keep on moving east. Deceased did, as he entered the intersection, slow up and did pull to the right in an effort to go between the streetcar and the parked car. It is a fair assumption that he would have been successful in this had the streetcar not at the instant before backed up. Deceased was only required to act as an ordinary

reasonable man would have acted under similar circumstances. It was a question for the jury whether his conduct reached that standard.

Defendant next argues that its demurrer should have been sustained because it failed to show it was guilty of any negligence that was the proximate cause of the collision. The evidence that has been heretofore set out bears on this question. Furthermore, there was evidence that the streetcar suddenly backed into the path of the automobile without warning. Whether it was stopped or moving slowly at the very instant of the impact is of small moment. The point is it backed suddenly into the path of the automobile when the ordinary reasonable man would expect it to move forward. There was substantial evidence also that the motorman in charge of the streetcar failed to keep a lookout; that there were no signals or warnings given and no watchman.

Defendant next argues that its demurrer should have been sustained because there was a fatal variance between the allegations of plaintiff's petition. At the outset of our discussion of this point it is proper to note that defendant did not file a motion for a new trial so it cannot urge trial errors here on appeal.

This argument of defendant requires us to state some facts about which there is no dispute. This action was originally brought in the name of Harry Leonard, the father of deceased. Defendant demurred to the petition and the demurrer was sustained, whereupon an amended petition was filed in the name of Harry Leonard, the father, and Gertrude, the mother, and stating they were the next of kin of deceased and that no administrator had been appointed for his estate. The issues had been made up and the cause was ready for trial. A short time before trial time Harry Leonard, the father, died. Gertrude T. Leonard filed a motion to revive the father's portion of the action. This motion was resisted by the defendant and the trial court denied the revivor. When the case was called for trial she insisted she was entitled to have her portion of it tried and as far as the father's interests were concerned she could act in a representative capacity and account to herself and her four children, who would inherit whatever interest the father might have, but in any event she was entitled to have a trial of her portion of the lawsuit and entitled to recover for such pecuniary loss as she herself had suffered. By permitting her to make a series of formal amendments the trial was carried on under that theory. The way defendant gets

at this in arguing a demurrer to the evidence is to point out that the petition stated positively that she, Gertrude Leonard, is the mother and next of kin of Henry E. Leonard and then Gertrude herself testified that Harry Leonard, her husband and also the father of deceased, died and left four children surviving him. It should be stated that these four children were also the children of plaintiff. The real burden of plaintiff's argument on this point is that when Harry Leonard died the action could only be carried on by a joint action in the name of the administrator of his estate and the present plaintiff. Defendant relies in a large measure upon a provision of the wrongful death statute (G. S. 1935, 60-3204), where it is provided, in part, as follows:

"That in all cases where . . . no personal representative . . . has been appointed, the action . . . may be brought by the widow, or where there is no widow, by the next of kin of such deceased."

The theory upon which plaintiff carried on the action was that when she brought the action and sought to recover only the damages to which she herself was entitled, counsel so advised the court and there can be no doubt that she was the only one of the family who had sustained a loss. There are some authorities to the effect that under such circumstances Gertrude T. Leonard might bring an action to recover for loss and later her husband's personal representative might bring one to recover whatever damages he had sustained. We are not called on to deal with that question here, however. The action was not revived in the name of the personal representative of the husband and it is too late to do that now. As far as the loss sustained by the plaintiff is concerned she was entitled to litigate that in her own name.

The defendant's demurrer to the plaintiff's evidence was properly overruled.

Defendant next argues that the trial court erred in not entering judgment on the jury's answer to question No. 7 and in setting aside the answer to that question. That question and answer will be set out again here. It was as follows:

"7. Do you find from the evidence that the defendant was guilty of negligence that was a proximate cause of the death of Henry Leonard? A. No."

The plaintiff moved to set aside the above answer on the ground that it was a conclusion and not a finding of fact and was a complex question containing more than one question and was contrary to the

evidence. Defendant argues this point here and states that the trial court sustained the motion to strike it because the answer was inconsistent with the general verdict and with the answers to other special questions. It meets this with authorities where we have held that where the answers to special questions conflict with the general verdict the special answers control. The fact is the argument of whether the answer to the question should be stricken was based on authorities where we have held that such a question calls for the conclusion of the jury as a matter of law rather than a finding on a question of fact. G. S. 1935, 60-2918, defines a special verdict. It provides, in part, as follows:

"A special verdict is that by which the jury finds facts only. It must present the facts as established by the evidence, . . . and they must be so presented that nothing remains to the court but to draw from them conclusions of law. . . . at the request of the parties thereto, or either of them, in addition to the general verdict, direct the jury to find upon particular questions of fact. . . ."

We presume nothing in favor of a special verdict. (See *Morrow v. Bonebrake,* 84 Kan. 724, 115 Pac. 585.) In fact, it is our practice to harmonize them with each other and with the general verdict if possible. (See *Leinbach v. Pickwick-Greyhound Lines,* 138 Kan. 50, 23 P. 2d 449. See, also, *Sams v. Commercial Standard Ins. Co.,* 157 Kan. 278, 139 P. 2d 859.) In *Harrison v. Travelers Mutual Cas. Co.,* 156 Kan. 492, 134 P. 2d 681, the jury in answer to special question No. 12 said the driver was not guilty of any negligence which was one of the proximate causes of the collision. There were other answers that conflicted with this. The plaintiff argued that the answer to question No. 12 settled the matter of his contributory negligence. We disagreed with this argument and said:

"With that contention we cannot agree. The finding is definitely general in character and is in the nature of a conclusion. It is an expression of the jury's conclusion from facts found in detail. (*Koster v. Matson,* 139 Kan. 124, 134, 30 P. 2d 107.) Such general findings or conclusions, if contradicted by special or detailed findings cannot prevail but are controlled by, and must yield to, the special or detailed findings of ultimate facts." (p. 498.)

*Long v. Shafer,* 164 Kan. 211, 188 P. 2d 646, was an automobile collision case. There was judgment for the plaintiff and on appeal the defendant argued, among other things, that the trial court erred in refusing to submit certain requested special questions. Among these was the following:

"What was the proximate cause of the collision?" We said:

"This calls for a conclusion as distinct from a finding of fact. The facts which show the proximate cause of the collision were found by the jury in its answers to questions 7 and 12, which were submitted. · . . . The answers to questions 3 and 4 indicate that it was not. Considering the questions submitted and the answers thereto we think it was not error for the court to refuse to submit these specific questions." (p. 214.)

See, also, *Eldredge v. Sargent,* 150 Kan. 824, 96 P. 2d 870. In the case at bar the jury found no watchman was at the intersection, no signal was given by defendant to the driver of the car of the operator's intention to back; the motorman did not keep a lookout for vehicles approaching from the rear. These were all acts of negligence pleaded in the petition. They were specific facts from which the court could determine whether they or any of them were the proximate cause of the collision. This was called to the court's attention when the motion to strike was argued. The trial court ruled correctly in sustaining the motion to strike it. Once this finding was stricken there was nothing at all in the answers to special questions upon which to base a motion for judgment for defendant notwithstanding the general verdict.

Defendant next argues that the trial court erred in entering judgment for plaintiff after setting aside the answers to special questions because there still remained undetermined in the case an unsettled issue of whether it was guilty of any negligence that was the proximate. cause of the injury and the trial court in proceeding to render judgment virtually found for the plaintiff and deprived the defendant of its right of trial by jury on that question. This argument is not good. What the trial court did was to substitute its judgment for that of the jury on the question of whether the acts of negligence proved were the proximate cause of the collision. No question of fact was taken from the jury.

Other errors urged by defendant are governed by what has already been said.

The judgment of the trial court is affirmed.

THIELE, J., concurs in the result.