## FREDERICK P. SAWYER v. EMIL J. SAUER.

1. INSTRUCTIONS; *Object and Purpose; Rights and Obligations of Parties.*
The purpose of an instruction is to assist the jury in correctly applying
the law to the facts, and sometimes a general statement of the rights and
obligations of the parties assists to a clearer understanding of the par-
ticular obligation claimed to have been violated.

2. NEGLIGENCE; *Drunkenness; Punitory Damages.* When a stage coach
proprietor employs a known drunkard as a driver, through whose negli-
gence while intoxicated a passenger receives injury, it is not error to
instruct the jury that they may give exemplary damages.

3. ———— *Contributory Negligence.* In case of personal injuries, slight·
negligence on the part of the plaintiff will not prevent a recovery, nor·
negligence which is only the remote cause of the injury.

*Error from Miami District Court.*

ACTION by *Sauer* to recover for personal injuries sustained
while riding as a passenger in defendant's stage-coach. The
petition alleged that the accident was caused by reason of the
drunkenness, and carelessness, and recklessness of the driver
of the coach; that the stage-horses ran away, and while plain-
tiff was trying to extricate himself he was thrown to the
ground and run over by the coach, his leg broken, etc. The
principal facts are stated in the opinion. The action was
brought in the district court of Labette county, and taken on
change of venue to the district court of Miami county, where
it was tried at the May Term 1872. The plaintiff asked
several instructions which were given, the first being as
follows:

" 1st. That a stage-coach proprietor who carries passengers
for compensation is responsible for all accidents and injuries
happening to passengers which might have been prevented
by human care and foresight. He is bound to furnish gentle
and well-broke horses, skillful, prudent, and sober drivers;
and the smallest degree of negligence in these particulars will .
render such proprietor liable for any injury to passengers
therefrom. And if the jury believe from the evidence, that
Emil J. Sauer, while a passenger on defendant's coach,
received any injury on account of any such negligence of
defendant, then they will find for the plaintiff?"

Other instructions are copied in the opinion. Verdict and judgment for plaintiff for $3,500. New trial refused, and *Sawyer* brings the case here on error.

*McComas & McKeighan,* for plaintiff in error:

1. The court below gave instruction No. 1, asked by plaintiff, upon the general duties and obligations of stage-coach proprietors, which, as matter of law, are probably stated correctly. But, an instruction given, ought not to be given to the jury merely because it was true in the abstract. It could only be correctly given to apply to the matters *at issue,* and to the evidence introduced under the allegations of the plaintiff's petition. (42 Mo., 79; 36 Mo., 351.) The allegation in the plaintiff's petition was that—

"By negligence, carelessness and unskillfulness of said defendant, his copartner and their servants, the horses attached to and drawing said coach became so unmanageable," etc.

The complaint is, that the defendant's *driver* did not discharge his duty. There was no averment in the petition that the defendant had employed a drunken driver, or that their horses were not "gentle and well broke," or that he was guilty of negligence, except at the time the injury is alleged to have been inflicted. The instruction referred to was calculated to mislead the jury, and induce them to consider what was not put in issue by the allegations of the plaintiff. And it was capable of prejudicing the defendant the more, because there was *some* evidence which the jury, if believing it, might have considered as proving the defendant guilty of a breach of his duty by employing a drunken driver, and furnishing wild and unmanageable horses. The evidence of the plaintiff tending to show that the driver was drunk, and the horses were wild, was admissible, as tending to show the degree of care and skill which the driver, under the circumstances, should have used; but was not admissible to show that the defendant's horses were wild, or the driver a drunkard. Evidence is receivable *under* allegations, not *over* them. It can only *sustain,* not *enlarge,* pleadings. Hence the said instruction was

erroneous, in that it was calculated to lead the jury to believe that the controversy had a wider range than given to it by the pleadings.

2. The court erred in giving instruction No. 3, asked by the plaintiff, and in refusing the counter instructions asked by defendant, on the same proposition, all of which instructions asked for by defendant are the same in substance. The jury, in the 3d instruction referred to, are told that if they find that the plaintiff was injured on account of the negligence of the defendant by the employment of a known drunken driver, they are not confined in fixing damages proven, but will be justified in giving exemplary damages. There was no evidence in the case to show either that May was a drunken driver, or that he was known to be so by either the defendant or anybody else. No witness swears that he ever saw May drunk except the uncorroborated testimony of one witness. There was some opinion ventured by two or three witnesses that the driver was under the influence of liquor, but they were mere conclusions, for which they laid no foundation by any fact to which they testified. There is no witness in this whole record who says that May did anything which a drunken man would have done, or omitted to do anything which a sober man would do, or anything which would lead to the conclusion that he was drunk; and the testimony of from six to eight witnesses conclusively shows that he was not drunk, or drinking. But, suppose he was drunk on that particular day: does any presumption follow from that that he was, either before or after that, continuously drunk? The same testimony would make the entire male population of the state drunkards. Therefore we say it was error to introduce into an instruction an hypothesis which could not grow out of the facts proved. But admit that he was a drunkard, and that the defendant knew it — of which knowledge there is no evidence — that would not characterize the conduct of the defendant as gross, wanton, or willful negligence, which *must exist* before the jury could give *punitive damages*. The instruction is in substance, "If you find that the defendant's driver was negligent, no

matter whether it was gross, ordinary, or slight, and you further find that May was a known drunken stage-driver, that then you may give exemplary damages." Such, in our opinion, is not the law. The court erred in giving said instruction, and in refusing those asked by defendant. 27 Mo., 28; 36 Mo., 226—351; 42 Mo., 79; 20 Ill. 235; Shear. & Red. on Neg., §§ 600, 601.

3. We think too there was error in giving the instruction, in the general charge in regard to contributory negligence, and in refusing to give the instructions asked by defendant on same question. The instructions so asked all bear upon the same point of negligence, differently stated; and in our view of the case, contain the law; and which, in one or more of the forms written, should have been given to the jury: 24 N. Y., 430—446; 36 N. Y., 153; 39 N. Y., 62; 44 N. Y., 470.

4. The court erred in overruling motion for a new trial. The damages were excessive. The damages were beyond compensation, and could only have been given under the influence of passion and prejudice.

The opinion of the court was delivered by

BREWER, J.: Plaintiff in error is the surviving partner of the firm of Sawyer & Ficklin, who were proprietors of a stage-coach line between Chetopa and Baxter Springs. Emil J. Sauer the defendant in error, a minor, who sues by his next friend, while a passenger in one of the coaches of Sawyer & Ficklin was injured, and brought his action in the district court to recover damages therefor. Verdict and judgment were in his favor for $3,500. To reverse this plaintiff in error brings the record here.

The main questions arise on the instructions. Objection is made to the first instruction given at the instance of the plaintiff. This instruction embodies a statement of the general duties and obligations of stage-coach proprietors, and is
1. Instructions; conceded by counsel to state them correctly. The
objects and
purposes.    objection is, that, being so full and general it touches upon matters not in issue, and was therefore calculated

to mislead the jury and induce them to consider matters foreign to the case. We do not think it open to that objection. The scope of inquiry under the petition seems to us wider than counsel state, and we do not find anything which was likely to have turned the thoughts of the jury away from the issues. The purpose of an instruction is to assist the jury in correctly applying the law to the facts of the case; and it not unfrequently happens that a general statement of the rights and obligations of the parties to a transaction assists materially to a clear understanding of the particular obligation claimed to have been violated. It may well have had that effect in this case. At any rate, we cannot see how it prejudiced the plaintiff in error, and that is as far as it is necessary for us to inquire.

The third instruction given at the instance of plaintiff and the refusal to give instructions of an opposite character are also alleged as error. That instruction is as follows:

"That if they believe from the evidence that Emil J. Sauer, while a passenger on defendant's stage-coach was injured on account of the negligence of defendant by the employment of a known drunken driver, that they the jury are not confined in fixing the damages proven, but will be justified in giving exemplary damages."

In *Wiley v. Keokuk*, 6 Kas., 94, it was decided that "whenever the elements of fraud, malice, gross negligence, or oppression mingle in the controversy, the law allows the jury to give what is called exemplary or vindictive damages." It is needless to re-examine the question here. That decision settles the correctness of this instruction; for it hardly admits of doubt that the employment by a stage-coach proprietor of a known drunkard, and entrusting to his care the lives and limbs of passengers, is the grossest of negligence. The traveling community have a right to expect that the drivers of coaches, like the engineers of locomotives, are men not only competent, but of sobriety; and whenever a known drunkard is placed in such positions of trust, the party so placing him should pay smartly for such reckless indifference to human life.

2. Negligence; drunkenness; punitory damages.

But it is claimed by counsel that there is not enough in the testimony to warrant such an instruction. There was abundant testimony, and from many witnesses, showing the intoxication of the driver at the time of the accident. One witness testified that he roused him out of a drunken sleep at the time the stage started, and but a short time before the accident, and helped him on to the driver's box, he being too drunk to get up without help. There was some testimony, though not abundant or positive, yet drawn from the defendant's witnesses, showing the use of liquor by the driver at other times, and tending to show intoxication on his part. Proof of actual knowledge by the proprietor is unnecessary. Proof of drunkenness so habitual as to be generally known in the community, is sufficient to raise a presumption of knowledge on his part. And while we think the testimony fails to show habitual drunkenness of the driver, or actual or presumptive knowledge thereof by defendant, yet it tends in that direction sufficiently to justify the court in laying down the law in reference thereto. The question was raised as to the right to award punitive damages, and it was proper for the court to lay down the rule respecting them.

The next question arises on the second instruction given by the court of its own motion, and the refusal to give several embodying in slightly different statements an opposite doctrine. That instruction is as follows: ·

"If the jury believe from the evidence that the plaintiff's negligence contributed to the injury complained of, he cannot recover. But if such negligence was only slight, or the remote cause of the injury, he may still recover, notwithstanding such slight negligence or remote cause."

It is a general rule that where the negligence of the plaintiff contributes to the injury he cannot recover. Where there is

3. Contributory negligence.

mutual fault the law will not try to determine which is the more to blame. Yet all that is required of the plaintiff is ordinary care and prudence. He is not called upon for the exercise of extraordinary diligence and care in averting the consequences of defendant's negli-

gence. Of course, what is ordinary prudence varies with the situation and surroundings. That which is ordinary prudence under some circumstances will be gross carelessness in others, so that no specific acts can be named as indicating the degree of care to be exercised. It is enough that the party does that which ordinarily prudent men would do under like circumstances. The rule in reference to this question is thus stated, in Shearman & Redfield on Negligence, § 29: "Where the negligence of the plaintiff is relied upon to defeat his recovery he must have been guilty of at least *ordinary* negligence. His failure to take great care is no defense to the action." See also, *Ernst v. Hudson River Railroad Co.*, 35 N. Y., 9; *Johnson v. Hud. River Rld. Co.*, 20 N. Y., 76; *Beers v. Housatonic Rld. Co.*, 19 Conn., 566. It is true, some of the New York decisions say that any negligence on the part of the plaintiff will defeat a recovery; but these courts reject the idea of degrees of negligence, and hold that if one does that which ordinarily prudent men would have done, he is guilty of no negligence, so that they in fact announce no different doctrine. In this state we recognize the different degrees of negligence, and therefore the instruction is in this respect properly worded. *U. P. Rly. Co. v. Rollins*, 5 Kas., 167. The law does not regard the remote causes of an injury. It is enough to determine the proximate causes. "The plaintiff's fault must also *proximately* contribute to his injury, in order to constitute any ground of defense." Shear. & Redf. on Neg., § 33; *Isbell v. N. Y. & N. H. Rld. Co.*, 27 Conn., 293; *Richmond v. Sac. Val. Rld. Co.*, 18 Cal., 351; *U. P. Rly. Co. v. Rollins*, 5 Kas., 167. Indeed, the instruction seems but to state the law as laid down in this last case, and a reference to that decision was really all that was necessary to dispose of this objection.

Several objections were raised to the admission of testimony, but none of them seem to us of sufficient importance to justify a reversal of the judgment. It is claimed that the verdict was excessive. It was for $3,500. The plaintiff's leg was broken, with a compound fracture of the tibia. He was con-

fined to his bed for thirteen weeks, and afterwards was on crutches for a month or two. He suffered a great deal of pain during his confinement, and occasionally since. We do not feel warranted in disturbing the judgment on this ground. The judgment will be affirmed.

All the Justices concurring.